# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
**JUDGE**

## LETTER OPINION

June 19, 2007

John Jackson
Kalison, McBride, Jackson & Murphy, P.A.
25 Independence Blvd.,  4ᵗʰ Floor
Warren, NJ 07059
*Attorney for Plaintiff and Third-Party Defendant Rey Bello*

John O'Toole
Kurt Dzugay
William Krauss
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
33 Washington St.
Newark, NJ 07102
*Attorney for Defendant*
*and Third-Party Plaintiff*

John Mastronardi
Styliades, Jackson and DiMeo
10 Executive Lake Park, Suite 310
401 Route 73 North
Marlton, NJ 08053
*Co-attorneys for Defendant*

> Re:   *Pain and Surgery Ambulatory Surgical Center v. Liberty Mutual Ins. Co.*
> Civil Action No. 06-CV-1501 (WJM)

Dear Litigants:

This matter comes before the Court on Defendants' motion to dismiss Count Three of Plaintiff's Complaint and Plaintiff's motion to dismiss the Counterclaim and Third-Party Complaint.  There was no oral argument.  Fed. R. Civ. P. 78.  For the reasons stated below, **Defendants' motion** is **GRANTED**, and **Plaintiff's motion** is **DENIED**.

**BACKGROUND**

This suit arises out of an insurance company's refusal to pay facility fees to a medical center.  In New Jersey, drivers are covered under New Jersey's no-fault automobile insurance system (No-Fault Act, N.J.S.A. 39-6A1-35).  The No-Fault Act requires automobile insurance companies, like Defendant Liberty Mutual Insurance Company ("Liberty Mutual"), to provide drivers with Personal Injury Protection ("PIP") coverage including payment of reasonable medical expenses.

Plaintiff Pain & Surgery Ambulatory Surgical Center ("P&S") is a medical center where patients receive surgical procedures.  For Liberty Mutual policyholders injured in automobile-related accidents and treated at P&S, P&S sought PIP payments from Liberty Mutual for incurred medical facility fees.  Liberty Mutual refused to pay these fees and asserted that P&S was not eligible to charge facility fees because of: (1) self-referral violations under the Codey Law, N.J.S.A. 45:9-22.5; (2) failure to meet New Jersey licensing requirements of a surgical facility; and (3) improper usage of the facility by non-owner physicians.  P&S contests these assertions and has filed this diversity suit alleging improper withholding of PIP benefits and seeking interest on overdue PIP benefits, attorney's fees and costs, consequential and punitive damages, and a declaration from the Court regarding its status as an ambulatory surgery center.

In response, Liberty Mutual filed a counterclaim against P&S and a third-party complaint against Wyckoff Surgical Center, LLC ("Wyckoff") and several individual doctors/shareholders of P&S and Wyckoff (Kristappa Sangavaram, Robert Agresti, John C. Quinn, and Rey N. Bello) for alleged insurance fraud.  Liberty Mutual contends that P&S misrepresented its status as a certified Medicare provider prior to its actual certification in order to fraudulently induce Liberty Mutual to pay facility fees.  In order to charge facility fees, a surgical practice must first become a certified Medicare provider.  *N.J.A.C.* 13:35-6.17.  P&S only became a certified Medicare provider on November 24, 2004.  Liberty Mutual, however, asserts that it paid facility fees incurred before November 24, 2004 to P&S based on alleged misrepresentations that P&S was a surgical practice authorized to charge facility fees.  With regards to the Third-Party Complaint, Liberty Mutual argues that the Third-Party Defendants fraudulently induced it to pay facility fees to P&S and Wyckoff when they knew that Wyckoff was never licensed to charge facility fees and that P&S charged facility fees for services it rendered prior to its certification.  Furthermore, Liberty Mutual claims that Defendants Kristappa Sangavaram and Robert Agresti "violated N.J.A.C. 13:35 6.16 by ow[n]ing Wyckoff with a layperson."  Countercl. and Third Party Compl. ¶ 58.

Liberty Mutual's motion to dismiss Count Three of P&S's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and P&S and Rey Bello's motion to dismiss Liberty Mutual's Counterclaim and Third-Party Complaint for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b) is now before the Court.

# ANALYSIS

## A.      Standard of Review

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982).

## B.      Motion to Dismiss

### 1.      Liberty Mutual's Motion to Dismiss

In Count Three of the Complaint, P&S asserts a bad faith claim against Liberty Mutual for its denial of PIP benefits and seeks compensatory, consequential, and punitive damages.  Liberty Mutual argues that P&S cannot claim punitive or consequential damages in New Jersey, and that New Jersey's no-fault statute is the exclusive remedy for claims of overdue payment of PIP benefits.  Therefore, Liberty Mutual concludes that as a matter of law, it cannot be held liable under a bad faith claim for withholding PIP benefits.

The Court exercises diversity jurisdiction over this case, and thus, the Court "must apply the substantive law as decided by the highest court of the state whose law governs the action."  *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 304, fn. 6 (3d Cir. 1995).  The Court finds, and the parties' agree, that New Jersey's substantive law governs the Complaint, the Counterclaim, and the Third-Party Complaint.  Where the precise questions before the federal court has not yet been answered by the state's highest court, the federal court must prognosticate on how the state's highest court would resolve the question.  *See Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 309 (3d Cir. 2006).  The decisions of the state's intermediate appellate court, while not precedent for this Court, should be given significant consideration by the federal court in the absence of any indication that the state's highest court would decide otherwise.  *See Nationwide Mutual Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

The New Jersey Supreme Court has made it clear that, absent egregious acts amounting to an independent tort, punitive damages are not available under a bad faith claim of overdue insurance benefits.  *See Pickett v. Lloyd's*, 131 N.J. 457, 476 (1993).  The New Jersey Supreme

Court, however, has yet to specifically rule on whether a plaintiff may seek other non-statutory damages for a denial of PIP benefits.  Thus, the Court must predict whether a claim of bad faith withholding of PIP benefits would be sustained by the New Jersey Supreme Court.  As explained below and based on a review of the statute and state caselaw, the Court agrees with Liberty Mutual that New Jersey's highest court would not permit a bad faith claim in the PIP context.

Recently, the Appellate Division of the New Jersey Superior Court in *Endo Surgi Center, P.C. v. Liberty Mutual Ins. Co.*, concluded that "PIP benefits are statutory in origin, and therefore, an insured who is wrongfully denied such benefits is entitled to only the statutory remedy of interest on the benefits and attorney's fees."  391 N.J. Super. 588, 591 (App. Div. 2007).  In reaching its conclusion, the court in *Endo* examined the objectives of the No-Fault Act and prior state caselaw.  First, the court noted that the No-Fault Act was enacted to provide prompt and efficient benefits to all automobile accident victims and to "minimiz[e] resort to the judicial process."  *Id*. at 592.  It further noted that the statute provided for specific remedies, including interest and attorney's fees, if PIP medical payments are overdue.  *Id*. at 592-93.  Second, the court analyzed prior decisions of New Jersey state courts regarding PIP benefits and concluded that the basis for denying punitive damages for the unreasonable withholding of PIP benefits applied equally to claims of compensatory damages.  *Id*. at 593.  These cases emphasized the statutory nature of PIP benefits and held that the statutory scheme provided the exclusive remedy for a wrongful denial of PIP benefits.  *Id*.  Third, the court found that its conclusion–that bad faith claims could not be sustained for wrongful refusal to pay overdue PIP benefits under the No-Fault Act–was consistent with the statute's other provisions regarding the mandatory submission of disputes regarding PIP payments to the alternative dispute resolution procedures.  *Id*. at 594-95.  To allow bad faith claims, the court found, would be to allow for the "circumvention of the statutorily mandated alternative dispute resolution procedure provided by N.J.S.A. 39:6A-5.1."  *Id*. at 595.

This Court finds the reasoned conclusion of the Appellate Division persuasive on the issue of bad faith claims for non-payment of PIP benefits.  Plaintiff's reliance on *Pickett* and state policy considerations in opposition to the dismissal of the bad faith claims were directly addressed by the Appellate Division.  Like the court in *Endo*, this Court reads *Pickett* to expressly recognize "that a claim for a wrong failure to pay statutorily mandated insurance benefits such as PIP should be treated differently than a claim that is not subject to statutory regulation."  *Id*.  The policy appeal to bad faith claims as a deterrent for insurance companies' reckless or wanton behavior falls short of justifying the need to undermine the statutory language and intent.  Indeed, as both the *Pickett* and *Endo* courts realized, tort law provides sufficient deterrence for outrageous behavior where an insurance company's actions arise to the level of an "independent tort . . . such as threats by the insurer's agents to kill the insured and the insured's children[.]"[1]  *Id*.  Actions falling short of an independent tort are deterred by the specific remedy

_____

[1] Although P&S's opposition brief argues that Liberty Mutual is liable for non-statutory damages under a separate tort arising out of the insurance contract, P&S's motion to amend the Complaint was denied by separate order, and the Court finds that no recognizable tort claim was pled in the complaint.  Even if the Court had granted

of interest and attorney's fees provided in the No-Fault Act.  Thus, the Court predicts that the New Jersey Supreme Court would rule that a bad faith claim for wrongful withholding of PIP benefits cannot be sustained in New Jersey, and Defendant's motion to dismiss Count Three of Plaintiff's complaint is **GRANTED**.

        2.       P&S and Rey Bello's Motion to Dismiss

P&S and Rey Bello seek dismissal of the Counterclaim and Third-Party Complaint pursuant to Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity.  P&S and Rey Bello argue that Liberty Mutual has failed to identify the particular patients for whom P&S and Rey Bello fraudulently sought facility fees, the dates of the alleged misrepresentations, the particularity of any false statements, and the amounts paid.

Rule 9(b) requires a heightened pleading standard for claims of fraud.  Specifically, Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "The purpose of Rule 9(b) is to place defendants on notice of the precise misconduct which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Gutman v. Howard Savings Bank*, 748 F. Supp. 254, 257 (D.N.J. 199) (citing *Seville Indus. Mach. Corp. v. Southmost Co.*, 742 F.2d 786, 791 (3d Cir. 1984)).  The rule mandates that plaintiffs substantiate their claim by pleading the "who, what, when, where, and how: the first paragraph of any newspaper story."  *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1994) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

A "plaintiff can meet this heightened pleading standard by alleging the identity of the person who made the alleged misrepresentation, the general content of the misrepresentation, along with the date, place and time the representation was made."  *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004).  Plaintiffs, however, are not strictly bound to this standard and are "free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

The Court is not entirely persuaded that Liberty Mutual's Counterclaim and Third-Party Complaint lack the specificity required under Rule 9(b) to place Counterclaim and Third-Party Defendants on sufficient notice regarding the alleged fraud.  The Court notes, and the parties do not contest, that the parties are equally in possession of the relevant information regarding when, for whom, and in what amount facility fees were sought for medical procedures performed prior to P&S's medicare certification in November 24, 2004.  Furthermore, Liberty Mutual, in its pleadings, clearly allege that the Counterclaim and Third-Party Defendants submitted numerous

---

P&S leave to file an amended complaint, Liberty Mutual's actions would be insufficient to constitute an independent tort claim as described in *Pickett*.  As P&S's opposition brief makes clear, the tort claim would arise out of the insurance contract that is governed by the No-Fault Act.  (Pl.'s Br. 7.)

"UB-92 forms" and "other HCFA forms" representing that P&S and Wyckoff were entitled to the receipt of facility fees from Liberty Mutual when, in fact, they were not entitled, and that these forms constitute fraudulent statements in violation of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-4(a)(1).  (Countercl. and Third-Party Compl. 15, 18, 24-25.)  Although Liberty Mutual's fraud allegations appear clear from the face of their pleading, the Court is sensitive to the heightened pleading burden required under Rule 9(b).  Thus, the Court directs Liberty Mutual to append within ten days of this letter opinion a schedule of the relevant patients, dates of service and submission, amounts in dispute, medical procedures performed, and persons who made the alleged fraudulent statements.  Should Liberty Mutual fail to submit an appropriate schedule, the Court will require an amended pleading from Liberty Mutual, and P&S and Rey Bello may renew their motion to dismiss.  Therefore, P&S and Rey Bello's motion to dismiss Liberty Mutual's Counterclaim and Third-Party Complaint is **DENIED** at this time.

## CONCLUSION

For the foregoing reasons, Liberty Mutual's motion to dismiss Count Three of P&S's Complaint is granted.  Counterclaim and Third-Party Defendants' motion to dismiss is denied at this time, and Liberty Mutual is directed to append a schedule as described above within ten days of this letter opinion or file an amended complaint.  An appropriate order follows.

s/William J. Martini

_____

**William J. Martini, U.S.D.J.**

6